*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL BRIAN MCJUNKIN,

        Defendant-Appellant.

UNPUBLISHED
October 14, 2024
3:03 PM

No. 364689
Calhoun Circuit Court
LC No. 2016-001379-FH

Before: MARKEY, P.J., and BORRELLO and GARRETT, JJ.

MARKEY, P.J. (*concurring in part and dissenting in part*).

I conclude that defendant's Fourth Amendment rights were not violated and that the trial court did not err by denying defendant's motion to suppress evidence of the coffee filters and their contents seized from the Ford Explorer (SUV) located in Craig Wightman's garage. In my view, the majority misapplies the exigent-circumstances exception to the warrant requirement, improperly limiting its scope or reach so that it did not include any search of the SUV in the garage. Accordingly, I respectfully dissent on the suppression issue. I do, however, concur in the majority's rejection of defendant's Standard 4 arguments.

I find it unnecessary to address the issue regarding the validity of the alleged consent because I agree with the majority that exigent circumstances existed that permitted the police officers to enter the garage and to be in a position from which they could observe the coffee filters in the Ford Explorer. But I disagree with the majority that the officers were not permitted to search the SUV and seize the coffee filters, which contained crushed pseudoephedrine tablets commonly used to manufacture methamphetamine (meth).

A trial court's underlying factual findings at a suppression hearing are reviewed for clear error. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). Clear error occurs when the reviewing court is firmly and definitely convinced that the trial court made a mistake. *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018). "But the application of constitutional standards regarding searches and seizures to essentially uncontested facts is entitled to less deference; for this reason, we review de novo the trial court's ultimate ruling on the motion to suppress." *Williams*, 472 Mich at 313. This Court reviews de novo whether the Fourth

-1-

Amendment was violated by the police and whether the exclusionary rule is applicable. *People v Anthony*, 327 Mich App 24, 32; 932 NW2d 202 (2019). "De novo review means that we do not extend any deference to the trial court." *In re Ott*, 344 Mich App 723, 735; 2 NW3d 120 (2022).

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." US Const, Am IV. "The Fourth Amendment of the United States Constitution—like Article 1, § 11 of the 1963 Michigan Constitution,[1] whose protections have been construed as coextensive with its federal counterpart—protects against unreasonable searches and seizures." *People v Mead*, 503 Mich 205, 212; 931 NW2d 557 (2019) (citation omitted).

As reflected in the text of the Fourth Amendment, the touchstone of any Fourth Amendment analysis is reasonableness. *People v Hughes*, 506 Mich 512, 524; 958 NW2d 998 (2020). Although a search warrant is not always required before the police search or seize a person's personal effects, there exists a strong preference in favor of obtaining a warrant for purposes of conducting a search, and the general rule is that the police must secure a warrant for a search or seizure to be reasonable under the Fourth Amendment. *Id.* at 524-525. "The warrant requirement is subject only to a few specifically established and well-delineated exceptions." *In re Forfeiture of $176,598*, 443 Mich 261, 265-266; 505 NW2d 201 (1993) (quotation marks and citations omitted).

One of the exceptions to the warrant requirement is the exigent-circumstances exception. *People v Campbell*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket Nos. 362588 and 362589); slip op at 9. The exigent-circumstances exception "allows police to search without a warrant 'in cases of actual emergency if there are specific and objective facts indicating that immediate action is necessary to (1) prevent the imminent destruction of evidence, (2) *protect the police officers or others*, or (3) prevent the escape of a suspect.' " *Id.*, quoting *People v Chowdhury*, 285 Mich App 509, 526; 775 NW2d 845 (2009) (emphasis added). An exigency exists "where there is a risk of danger to the police or others inside or outside a dwelling." *People v Henry (After Remand)*, 305 Mich App 127, 138; 854 NW2d 114 (2014), citing *People v Cartwright*, 454 Mich 550, 558; 563 NW2d 208 (1997). "Such a search is quick and limited, and conducted for the sole purpose of ensuring the safety of police officers and other persons." *Cartwright*, 454 Mich at 557.

---

[1] Const 1963, art 1, § 11, provides, in part:

> The person, houses, papers, possessions, electronic data, and electronic communications of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things or to access electronic data or electronic communications shall issue without describing them, nor without probable cause, supported by oath or affirmation. . . . .

With respect to the plain-view doctrine, in *People v Champion*, 452 Mich 92, 101; 549 NW2d 849 (1996), our Supreme Court observed:

> The plain view doctrine allows police officers to seize, without a warrant, items in plain view if the officers are lawfully in a position from which they view the item, and if the item's incriminating character is immediately apparent. A fundamental characteristic of the doctrine is that it is exclusively a seizure rationale. No searching, no matter how minimal, may be done under the auspices of the plain view doctrine. [Citations omitted.]

A requirement that must be satisfied before the plain-view doctrine can be applied is that the initial intrusion by police officers cannot violate the Fourth Amendment, i.e., the officers must have been conducting a lawful search when they stumbled upon incriminating evidence in plain view. *People v Hughes*, 506 Mich 512, 550 n 25; 958 NW2d 98 (2020). "Where, once an otherwise lawful search is in progress, the police inadvertently come upon a piece of evidence, it would often be a needless inconvenience, and sometimes dangerous—to the evidence or to the police themselves— to require them to ignore it until they have obtained a warrant particularly describing it." *Coolidge v New Hampshire*, 403 US 443, 467-468; 91 S Ct 2022; 29 L Ed 2d 564 (1971). "[P]lain view alone is never enough to justify the warrantless seizure of evidence[,]" and "the discovery of evidence in plain view must be inadvertent." *Id.* at 468. Under the plain-view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v Dickerson*, 508 US 366, 375; 113 S Ct 2130; 124 L Ed 2d 334 (1993); see also *Champion*, 452 Mich at 104.

In this case, the police detected a strong odor of ammonia when they arrived at the scene, suggesting to the experienced officers that a meth lab was being operated. The police saw an active, one-pot meth lab through an open side-door to the garage. There was testimony that one-pot meth labs constitute a dangerous condition because they are very susceptible to catching fire or exploding. And there was testimony that an explosion here could have even placed neighboring properties at risk. Moreover, there was testimony that when a one-pot meth lab is discovered at a location, it is not unusual for the police to then find additional meth labs at the site.

The majority, concluding that exigent circumstances excused the officers' warrantless entry into the garage, observes:

> Undisputed evidence showed that the officers entered the garage to secure an active one-pot meth lab that was visible through the open door, to ensure the garage was free of other immediately-dangerous chemical processes, to ventilate the area, and to sweep the garage for suspects who might pose a risk to officers or who might be harmed by a chemical fire or explosion. Based on the smells coming from the garage and the presence of the active one-pot, it was reasonable for the officers to believe that McJunkin, [Justin] McCowen, and Wightman were manufacturing meth and it was reasonable for them to enter the garage to secure the one-pot out of caution for themselves and others in the area.

But the majority then concludes that the exigent-circumstances exception to the warrant requirement in conjunction with the plain-view doctrine did not support the admission of the disputed evidence. The majority reasons:

> However, plain view relates to the seizure of evidence and, alone, never operates to permit a search or seizure absent some other exception to the warrant requirement. We hold that the officers could not lawfully seize the coffee filters without a warrant because, regardless whether the coffee filters were visible and incriminating, no exception to the warrant requirement permitted their seizure. First, although exigent circumstances excused the officers' warrantless entry into the garage, none of the exigent circumstances related to an entry into or search of the Explorer. No evidence suggested any active meth labs were inside the Explorer or that police had to otherwise enter the vehicle to make the area safe.

I adamantly disagree with the majority's reasoning in the preceding passage. Until the officers actually looked inside and searched the SUV, they had no idea whether there were any one-pot meth labs in the vehicle or whether any unknown individuals were hiding in the SUV. The exigent circumstances that justified entry into and a sweep of the garage did not stop at the SUV, which was parked in the garage. Indeed, the presence of one meth lab in the garage and the coffee filters inside the SUV suggested that there may be additional chemicals or another one-pot meth lab in the SUV. For purposes of protecting themselves, the perpetrators, and neighbors from the danger of a fire or an explosion, the officers were justified under the exigent-circumstances exception to search the SUV.[2] Close proximity to the vehicle's engine and gas tank would have created an even more dangerous situation had there been additional one-pot meth labs in the SUV. Therefore, the evidence reflected that the police were lawfully in a position from which to see the coffee filters, that the incriminating character of the filters, under all the surrounding circumstances, was immediately apparent, and that the officers had a lawful right of access to the coffee filters. See *Dickerson*, 508 US at 375. Accordingly, the coffee filters and pseudoephedrine found therein were properly seized, and there was no violation of defendant's Fourth Amendment

---

[2] The officers' subjective states of mind and intent are ultimately not relevant to the analysis. In *Devenpeck v Alford*, 543 US 146, 153; 125 S Ct 599; 160 L Ed 2d 537 (2004), the United States Supreme Court explained:

> As we have repeatedly explained, the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action. The Fourth Amendment's concern with reasonableness allows certain actions to be taken in certain circumstances, whatever the subjective intent. Evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer. [Quotation marks, citations, and alteration brackets omitted.]

rights. I would thus affirm the trial court's denial of defendant's motion to suppress the evidence. I do, however, concur in the majority's rejection of defendant's Standard 4 arguments.

I respectfully concur in part and dissent in part.

/s/ Jane E. Markey